No. 26-5182

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

GANNETT COMPANY, INC.; GRAY LOCAL MEDIA, INC.; NASHVILLE PUBLIC MEDIA, INC, *dba* NASHVILLE BANNER PUBLISHING COMPANY; NEXSTAR MEDIA GROUP, INC., SCRIPPS MEDIA, INC.; STATES NEWSROOM *dba* TENNESSEE LOOKOUT; TEGNA INC.,

      Plaintiffs-Appellants;

v.

JEFF LONG, *in his official capacity as Commissioner of the Tennessee Department of Safety and Homeland Security*; GLENN R. FUNK, *in his official capacity as District Attorney General for Nashville & Davidson County, Tennessee*; JOHN DRAKE, *in his official capacity as Chief of Metropolitan Nashville Police Department*;

      Defendants-Appellees.

---

## BRIEF OF APPELLEE JOHN DRAKE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ, DIRECTOR OF LAW

ALLISON L. BUSSELL
PETER G. VIZCARRONDO
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341

{N0768177.1}

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Sixth Circuit Rule 26.1, Appellee John Drake makes the following disclosures:

1.  Are said parties a subsidiary or affiliate of a publicly owned corporation? <u>No</u>.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? <u>No</u>.

Dated:  <u>May 28, 2026</u>

/s/ *Peter G. Vizcarrondo*

Peter G. Vizcarrondo

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ...........................................ii

TABLE OF CONTENTS ............................................................iii

TABLE OF AUTHORITIES................................................iv

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

STATEMENT OF JURISDICTION .....................................................2

STATEMENT OF THE ISSUES...............................................3

STATEMENT OF THE CASE ..................................................... 4

STANDARD OF REVIEW.....................................................6

SUMMARY OF THE ARGUMENT ........................................... 7

ARGUMENT ........................................................................ 8

CERTIFICATE OF COMPLIANCE...................................... 16

CERTIFICATE OF SERVICE................................................ 17

ADDENDUM ...................................................................... 18

# TABLE OF AUTHORITIES

Cases

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979) ......................................... 9

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) ......................................... 9

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ..................................... 13

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427
　　(6th Cir. 2014) ................................................................................. 6

*Connection Distrib. Co. v. Holder*, 557 F.3d 321 (6th Cir.
　　2009) .............................................................................................. 12

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019) ...................... 6

*Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012) ....................................... 12

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................................ 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................... 8

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) ................. 9, 10, 11, 12

*Moms for Liberty v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499
　　(6th Cir. 2025) ................................................................................. 7

*Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602 (6th Cir.
　　2008) ........................................................................................... 9, 15

*Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir.
　　2021) .............................................................................................. 11

*Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362 (6th
　　Cir. 2018) ....................................................................................... 10

*Schickel v. Dilger*, 925 F.3d 858 (6th Cir. 2019) ................................... 12

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................... 9, 10

*Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg.*
    *Cap., Inc.*, 274 F.3d 1085 (6th Cir. 2001)...........................................6

<u>Statutes</u>

28 U.S.C. § 1292 ...............................................................................2

28 U.S.C. § 1331 ...............................................................................2

42 U.S.C. § 1983 ...............................................................................2

Tenn. Code Ann. § 39-16-612 ......................................................... 3, 4, 7

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The issues relating to standing and the absence of any credible threat of enforcement are fully set out in the record, including the declarations submitted by the Metropolitan Nashville Police Department ("MNPD"). Additional argument would not aid the Court.

{N0768177.1}                                     1

## STATEMENT OF JURISDICTION

The district court exercised subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs asserted federal constitutional claims under 42 U.S.C. § 1983. The district court denied Plaintiffs' motion for a preliminary injunction on February 18, 2026. Plaintiffs filed a timely notice of appeal under Federal Rule of Appellate Procedure 4(a). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1), which authorizes appellate review of orders denying injunctive relief.

## STATEMENT OF THE ISSUES

1.    Whether Plaintiffs-Appellants lack Article III standing against Defendant-Appellee Drake because MNPD has never enforced Tenn. Code Ann. § 39-16-612(a), has charged no one under it, and has issued a department-wide instruction not to enforce the statute while this litigation is pending.

## STATEMENT OF THE CASE

This appeal concerns a pre-enforcement challenge to Tenn. Code Ann. § 39-16-612(a), a statewide statute enacted on July 1, 2025 (the "Act"). The statute makes it a misdemeanor to intentionally approach within 25 feet of a law enforcement officer who is lawfully engaged in official duties after being ordered to retreat. Plaintiffs, a coalition of media organizations, filed suit on July 22, 2025, alleging the statute chills their newsgathering activities. (Compl. ¶¶ 12, 55, RE 1, PageID # 3, 14.) Plaintiffs named Chief John Drake as a defendant in his official capacity as head of the MNPD. (*Id.* ¶ 27, PageID # 8.) Although Plaintiffs conduct newsgathering statewide, Plaintiffs did not name any other local officials in the many other jurisdictions where they operate.

Plaintiffs also did not identify any instance in which MNPD or Chief Drake had ordered any journalist to retreat under the statute, initiated an investigation under the statute, or charged any person with violating it. To the contrary, since the Act went into effect, MNPD has not charged a single individual with violating it. (Declaration of Chris Gilder, RE 33-1, PageID # 321.) Furthermore, on August 12, 2025, MNPD leadership officially instructed its officers that the statute's

{N0768177.1}    4

constitutionality had been challenged and directed them to refrain from enforcing the statute while this litigation is pending. (*Id.*, PageID # 322.) Plaintiffs' own declarations concede that while they have been asked to step back at scenes generally, they have not been arrested or prosecuted under the statute by MNPD. (Declaration of Andy Cordan, ¶¶ 7, 12, RE 29-1, PageID # 276-77; Declaration of Stephen Elliott, ¶¶ 14–15, RE 29-3, PageID # 287-88.)

Plaintiffs filed a Motion for a Preliminary Injunction on August 22, 2025, and on February 17, 2026, the district court held a hearing on that motion. (Motion for Preliminary Injunction, RE 19, PageID # 68; Hearing Transcript, RE 44, PageID # 350.) At the preliminary-injunction hearing, Chief Drake reiterated that MNPD is not enforcing the Act and will continue not to enforce it unless and until the litigation concludes. (Hearing Transcript, Page ID # 404.) Plaintiffs offered no evidence that any MNPD officer has threatened to enforce the Act against any journalist, nor that reporters face any non-speculative risk of prosecution in Nashville. The District Court denied Plaintiffs' preliminary-injunction motion, concluding that they had failed to establish irreparable harm because no enforcement had occurred and no enforcement was

{N0768177.1}                                5

threatened. (Order Denying Preliminary Injunction, RE 40, PageID # 331.) The Court also directed the parties to notify the Court if there was any change in their enforcement policy regarding the Act. (*Id.*)

Plaintiffs now appeal, but the material facts remain unchanged: MNPD has never enforced the statute and has affirmatively declined to do so while the litigation is pending. Thus, no credible threat of future enforcement exists.

## STANDARD OF REVIEW

The denial of a preliminary injunction is reviewed for abuse of discretion. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001). This Court reviews legal determinations de novo and factual findings for clear error but ultimately affords substantial deference to the district court's weighing of the equitable factors. *Id.* A plaintiff seeking a preliminary injunction must establish, among other things, (1) a likelihood of success on the merits and (2) a likelihood of suffering irreparable harm absent relief. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). Failure to establish either factor is sufficient to deny an injunction. *See, e.g.*, *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019).

Where standing is challenged at the preliminary-injunction stage, plaintiffs bear the burden of demonstrating a concrete injury or a credible threat of enforcement. *Moms for Liberty v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 509 (6th Cir. 2025).

## SUMMARY OF THE ARGUMENT

Defendant-Appellee Drake, in his official capacity as MNPD Chief of Police, takes no position on the constitutionality of Tenn. Code Ann. § 39-16-612(a), which makes it a misdemeanor to "intentionally approach[ ] within twenty-five feet (25'), a law enforcement officer after the officer has ordered the person to stop approaching or to retreat[.]" The State of Tennessee has appeared in this action to defend the Act's constitutionality.

Chief Drake submits this brief for a single, threshold reason: Plaintiffs-Appellants lack standing because they face no credible threat of enforcement from MNPD. Plaintiffs bring a pre-enforcement constitutional challenge against a local municipal official for a state law that MNPD has never enforced, and which MNPD has explicitly instructed its officers not to enforce. Because Plaintiffs cannot establish

Article III standing against Chief Drake, this Court should affirm the District Court's denial of Plaintiff's Motion for a Preliminary Injunction.

## ARGUMENT

The state law at issue, which the Tennessee General Assembly enacted, applies statewide. Chief Drake, in his official capacity, is the only local defendant to this action. MNPD has never enforced the statute and has explicitly instructed its officers not to enforce it for the duration of the litigation. Accordingly, Plaintiffs-Appellants lack standing because they face no credible threat of prosecution from MNPD.

Article III of the Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const., Art. III, § 2. To establish Article III standing, a plaintiff must show an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and is capable of being "redressed" by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The challenged injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560. To establish Article III standing in a pre-enforcement challenge, a plaintiff must demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional

{N0768177.1}                           8

interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiffs claim standing in this case based primarily on their assertion that the Act inflicts a "chilling effect" on their First Amendment rights. However, in the free speech context, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir. 2016) (citing *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)). "Absent a concrete act on the part of the [defendant]," allegations of self-censorship "fall squarely within the ambit of 'subjective chill' that the Supreme Court definitively rejected for standing purposes." *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008) (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972)) (cleaned up).

To determine whether a plaintiff's fear of prosecution is credible and objective, the Sixth Circuit evaluates the following factors: (1) "a history of past enforcement against the plaintiffs or others"; (2)

{N0768177.1}                                          9

"enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely"; and (4) "the defendant's refusal to disavow enforcement of the challenged statute." *McKay*, 823 F.3d at 869 (internal citations and quotation marks omitted).

Applying the *McKay* factors to the undisputed record in this case conclusively demonstrates that Plaintiffs face no credible threat from MNPD. First, there is zero history of past enforcement of the statute by MNPD. This Court has repeatedly noted that past enforcement against the same conduct is vital evidence that a threat is not "chimerical." *Susan B. Anthony List*, 573 U.S. at 164 (cleaned up). Here, MNPD's Records Management System confirms that the department has not charged any individual with violating the Act since it went into effect on July 1, 2025. (Gilder Decl., RE 33-1, PageID # 321.) Where a record is silent regarding any history of past enforcement against the plaintiffs or anyone else, there is no credible threat. *McKay*, 823 F.3d at 870; *see also Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362, 367–70 (6th Cir. 2018) (finding no standing where plaintiffs alleged no history of enforcement against them).

Second, MNPD has sent no warning letters to Plaintiffs. This case stands in contrast to matters where this Court has found a credible threat of enforcement based on targeted warnings or investigative demands. *See Online Merchants Guild v. Cameron*, 995 F.3d 540, 550–51 (6th Cir. 2021) (finding that an Attorney General's civil investigative demand and subpoena issued to a merchant asserting "reason to believe" a violation occurred supported a credible fear of prosecution). MNPD has issued no such warnings to Plaintiffs or their reporters.

Third, and most importantly, MNPD has explicitly disavowed enforcement of the statute. Under the final *McKay* factor, a defendant's refusal to disavow enforcement weighs heavily in favor of standing; conversely, an explicit disavowal defeats it. MNPD's total disavowal of enforcement aligns with *McKay*, where the Court held that a plaintiff lacked standing to challenge a courthouse ban on electronic devices. *McKay*, 823 F.3d at 870. In *McKay*, the Sheriff's department circulated an internal memorandum instructing deputies "not to detain[ ] any individual . . . or to confiscate any device" under the challenged policy without a judge's specific order. *Id.* Because the deputies were formally instructed not to enforce the policy autonomously, the Court found that

{N0768177.1}                                        11

the plaintiff's fear of enforcement was not immediate or credible. *Id.* MNPD's directive here is, in fact, even stronger than in *McKay*, because it is buttressed by a court order requiring advance notice before any enforcement can begin.

The Sixth Circuit routinely finds that a plaintiff lacks standing when the government defendant expressly disavows an intention to enforce the challenged statute. *See Schickel v. Dilger*, 925 F.3d 858, 865–66 (6th Cir. 2019) (finding no standing where the state agency "explicitly disavowed enforcement" against the plaintiffs); *Glenn v. Holder*, 690 F.3d 417, 426 (6th Cir. 2012) (Stranch, J., concurring) (finding no standing where the Attorney General disavowed intent to enforce the statute against plaintiffs' conduct); *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 339 (6th Cir. 2009) (en banc) (finding no standing based on a "law-enforcement vacuum" where the government disclaimed authority and intention to enforce the law).

In their opening brief, Plaintiffs attempt to manufacture a threat by arguing that MNPD's directive to "refrain from enforcing the statute" is merely a commitment not to make arrests, rather than a commitment

not to issue the underlying "orders to retreat." But this reframing misunderstands both the statute and the relevant Article III inquiry.

Plaintiffs rely on language from *City of Chicago v. Morales*, 527 U.S. 41 (1999), wherein the Supreme Court addressed an ordinance that criminalized loitering, noting that a "dispersal order itself is an unjustified impairment of liberty." *Id.* at 58. But *Morales* does *not* hold that the mere issuance of an order—untethered to any threat of criminal liability—creates Article III injury. In fact, standing was not even at issue in *Morales*. The constitutional problem there arose because Chicago was actively enforcing the ordinance: Officers issued dispersal orders pursuant to the ordinance's authority and arrested thousands of individuals who disobeyed them. *Id.* at 49–50 ("During the three years of its enforcement, the police issued over 89,000 dispersal orders and arrested over 42,000 people for violating the ordinance."). The injury was therefore concrete, ongoing, and inseparable from active enforcement. Here, by contrast, MNPD is not enforcing the Act at all and has never done so. No MNPD officer may arrest or cite anyone pursuant to the Act's authority, meaning Plaintiffs face no imminent injury from this Defendant.

{N0768177.1}                                     13

Moreover, a hypothetical injury resulting from disobeying an officer's command would fail to meet Article III's other standing requirements. Like all law enforcement, MNPD officers possess longstanding preexisting authority to control a scene, a fact that Plaintiffs' own reporters acknowledge. (*See, e.g.,* Cordan Decl. ¶ 7, RE 29-1, PageID # 276 (explaining, "I *expect* to be asked to step back or move when covering breaking news," and that "[i]t is very routine to get asked to step behind crime tape or to move to a staging area once law enforcement gets set up) (emphasis in original).) Any asserted injury, therefore, would not be traceable to the Act at all but instead to an officer's exercise of routine, independent authority necessary to an officer's job duties. Likewise, enjoining the Act would not redress such an injury because officers would retain the same preexisting ability to issue lawful commands regardless of the Act's status.

With no past enforcement, no warnings, an explicit and judicially supervised disavowal of enforcement, and no imminent threat of prosecution, Plaintiffs' fears rest on "subjective apprehension and a personal (self-imposed) unwillingness to communicate"—not a credible

threat of prosecution. *Morrison*, 521 F.3d at 610. Plaintiffs thus lack Article III standing against Chief Drake.

Dated: May 28, 2026

Respectfully submitted,

DEPARTMENT OF LAW OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ

/s/ *Peter G. Vizcarrondo*
ALLISON L. BUSSELL
PETER G. VIZCARRONDO
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
allison.bussell@nashville.gov
peter.vizcarrondo@nashville.gov

*Counsel for Defendant-Appellee Chief Drake in his official capacity*

{N0768177.1}

15

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), and it contains <u>2,267</u> words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Century Schoolbook 14-point type in Microsoft Word for Office 365.

/s/ <i>Peter G. Vizcarrondo</i>
Peter G. Vizcarrondo

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via the Court's electronic filing system to all counsel of record on the 28th day of May, 2026.

Grayson Clary
Paul R. McAdoo
The Reporters Committee for
Freedom of the Press
1156 15th Street, N.W.
Suite 1020
Washington, DC 20005

Gabriel Krimm
Office of the Attorney General
of Tennessee
500 Dr. Martin L. King Jr. Boulevard
Suite 3214
Nashville, TN 37243

/s/ *Peter G. Vizcarrondo*
Peter G. Vizcarrondo

## ADDENDUM
### DESIGNATION OF CITED DISTRICT COURT DOCUMENTS
### (WITHIN THE ELECTRONIC RECORD)

| R. No. | Title | Page ID # Range |
|---|---|---|
| 1 | COMPLAINT | 1-21 |
| 19 | MOTION FOR PRELIMINARY INJUNCTION | 67-69 |
| 29-1 | DECLARATION OF ANDY CORDAN | 274-277 |
| 29-3 | DECLARATION OF STEPHEN ELLIOTT | 283-288 |
| 33-1 | DECLARATION OF CHRIST GILDER | 321-322 |
| 40 | ORDER DENYING PRELIMINARY INJUNCTION | 331 |
| 44 | HEARING TRANSCRIPT | 350-415 |